UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

---

JEFFREY NUZIARD,
MATTHEW PIPER, and
CHRISTIAN BRUCKNER,

      Plaintiffs,

  v.

MINORITY BUSINESS DEVELOPMENT AGENCY,
JOSEPH R. BIDEN, JR.,
GINA M. RAIMONDO, and
DONALD R. CRAVINS, JR.,

      Defendants.

---

## VERIFIED COMPLAINT

---

Plaintiffs allege their complaint against Defendants as follows:

## INTRODUCTION

1.    The United States Constitution demands equal treatment under the law. The federal government, for example, cannot establish a separate agency dedicated to helping only some races, but not others. Yet that is exactly what Defendants have now done.

2.    On November 15, 2021, President Biden signed the Infrastructure Investment and Jobs Act ("Infrastructure Act"), creating the newest federal agency: the Minority Business Development Agency ("MBDA"). This agency is dedicated to helping only certain businesses based on race or ethnicity.

3.     Because it relies on racial and ethnic classifications to help some individuals, but not others, the MBDA violates the Constitution's core requirement of equal treatment under the law.

4.     Plaintiffs are three small business owners from Texas, Wisconsin, and Florida. They are all interested in finding new ways to grow their business and would value the advice, grants, consulting services, access to programs, and other benefits offered by the MBDA. But that agency won't help them because of their race. Plaintiff Bruckner, for example, emailed the MBDA in Orlando and was told that it could not help him because of his race. The MBDA's statutes, regulations, and website all speak a clear message of discrimination: Defendants refuse to help white business owners like Plaintiffs, as well as many other businesses owned by other non-favored ethnicities from North Africa, the Middle East, and North Asia.

5.     Plaintiffs therefore seek an order declaring the MBDA to be unconstitutional and an injunction prohibiting Defendants from discriminating against business owners based on race or ethnicity.

## THE PARTIES

6.     Plaintiff Jeffrey Nuziard is a white male who lives in Tarrant County, Texas. He is a veteran of the U.S. Armed Forces, and after a 20-year career in investment banking, Dr. Nuziard went back to school and earned a PhD. Dr. Nuziard now owns and operates his own business, Sexual Wellness Centers of Texas, which has two locations and will be expanding to additional locations in the future. Like many businesses, the COVID-19 pandemic impacted Dr. Nuziard's business,

requiring him to delay his grand opening by several months in 2020 and leading to staffing problems. Dr. Nuziard has sought assistance from the federal government in the past but has been denied grants. He is interested in the MBDA because it offers grants, training, access to contracts and networks, financial sourcing assistance, strategic business consulting, and other resources to businesses; however, Dr. Nuziard is not eligible for MBDA assistance because he is white.

7.    Plaintiff Matthew Piper is a white male who lives and works in northeast Wisconsin. Mr. Piper grew up in extreme financial poverty in Denver, Colorado, but through hard work and persistence, he eventually graduated with honors from the University of Colorado-Boulder's Environmental Design and Planning College. After college, Mr. Piper became a licensed architect and worked with distinguished design firms on Chicago's "Magnificent Mile" for 12 years. He also founded Piper Zenk Architecture in Denver, which he worked at for about a decade. In 2016, Mr. Piper moved to Wisconsin, where he now owns and operates PIPER Architects. As a small business owner, Mr. Piper could benefit from many of the services offered by the MBDA, but he is ineligible for those services because he is white. Mr. Piper is concerned for himself and the millions of other small business owners in America who are excluded from MBDA services because of the color of their skin.

8.    Plaintiff Christian Bruckner is a white male who lives and works in Tampa, Florida. He is an immigrant who came to America in the 1970s to escape the communist regime in Romania. His parents wanted a better life for him in a country

that values constitutional rights and the principle of equality under the law. In 1989, Mr. Bruckner was seriously injured in a car wreck. He is permanently disabled. Mr. Bruckner has over 20 years of experience in contracting and owns Project Management Corporation. He is seeking support to sustain and strengthen his business. Mr. Bruckner is interested in the MBDA because it offers assistance and resources to businesses that seek contracting opportunities.

9.     Defendant MBDA is a federal agency within the United States Department of Commerce. *See* 15 U.S.C. § 9502(a).

10.    Defendant Joseph R. Biden, Jr. is the President of the United States. Under U.S. Const., art. II, § 3, he must "take care that the laws be faithfully executed," including the provisions of the Infrastructure Act referenced in this Complaint. Defendant Biden, through one or more White House officials, oversees the implementation of the Infrastructure Act, including efforts to assist minority business enterprises.[1] He is sued in his official capacity.

11.    Defendant Gina M. Raimondo is the United States Secretary of Commerce. She is responsible for the agencies within the Department of Commerce, including the MBDA. She is sued in her official capacity.

---

[1] *See, e.g.,* White House Fact Sheet, *The New Small Business Boom Under the Biden-Harris Administration* (Jan. 25, 2022), available here; White House, Twitter Account (Jan. 10, 2021), available here ("Our priority will be Black, Latino, Asian, and Native American owned small businesses . . . .").

12.     Defendant Donald R. Cravins Jr. is the Under Secretary of Commerce for Minority Business Development. Defendant Cravins is responsible for the administration of the MBDA, including the race and ethnicity eligibility requirements for the MBDA Business Center Program and other MBDA programs. *See* 15 U.S.C. § 9502(b) and 15 C.F.R. pt. 1400. He is sued in his official capacity.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this complaint under 28 U.S.C. §§ 1331 and 2201 and 5 U.S.C. § 702 because this case presents a substantial question of federal law—specifically whether the race and ethnicity eligibility requirements for the MBDA Business Center Program (and other MBDA programs and services), and Defendants' implementation thereof, violate the guarantees of equal protection under the United States Constitution and 5 U.S.C. § 706.

14.     This Court has authority to issue a declaratory judgment, to order injunctive relief, and to award attorneys' fees and costs and other relief that is necessary and proper pursuant to 28 U.S.C. §§ 2201, 2202, and 2412 and 5 U.S.C. §§ 705 and 706.

15.     Venue is appropriate in this district under 28 U.S.C. § 1391(e)(1): A substantial part of the events giving rise to this claim occurred in this district and a substantial part of the property subject to this action is situated in this district because Defendants maintain an active office within this district and provide services and benefits within this district. Additionally, a Plaintiff resides and conducts business in Tarrant County, which is within this district.

## FACTUAL BACKGROUND

16.     On January 20, 2021, Defendant Biden issued an executive order instructing federal agencies to adopt a "whole-of-government equity agenda" that must, in part, "allocate resources to address the historic failures to invest sufficiently, justly, and equally in underserved communities, as well as individuals from those communities."[2] This term, "underserved communities," includes only the following racial groups: "Black, Latino, and Indigenous and Native American persons, Asian Americans and Pacific Islanders and other persons of color." Other racial groups, such as whites, north Africans, Middle Eastern peoples, north Asians, and others who do not identify with the specified racial preferences, are excluded from special treatment. This executive order applies to Defendants Raimondo and Cravins.

17.     On November 15, 2021, President Biden signed into law the Infrastructure Act. As part of this legislation, Congress created the MBDA within the Department of Commerce and appropriated $550 million through fiscal year 2025 for the new agency to run operations and programs and to establish new offices.

18.     The MBDA's mission is to "promote the growth of minority owned businesses,"[3] and the Under Secretary must establish "regional offices" for "each of the regions of the United States, as determined by the Under Secretary" and any such other offices as are necessary. 15 U.S.C. § 9502(e)(2)(A).

---

[2] Exec. Order No. 13985, 86 Fed. Reg. 7009 (Jan. 20, 2021), available here.

[3] U.S. Dept. of Commerce, https://www.commerce.gov/bureaus-and-offices/mbda.

19.     On February 16, 2023, Defendant Biden issued another executive order "advancing racial equity."[4] Pursuant thereto, Defendant Biden, among other things, ordered Defendants Raimondo and Cravins to "create equitable opportunity and advance projects that build community wealth." Building "community wealth," however, is limited to "the capacities of underserved communities," which again is focused on certain racial groups, but not others.

20.     Defendant Raimondo has described the MBDA as the "only Federal government agency dedicated **<u>solely</u>** to supporting minority-owned businesses, enterprises, and entrepreneurs" (emphasis added).[5]

21.     Defendant Cravins has explained that the MBDA is "**<u>solely</u>** dedicated to the growth and global competitiveness of minority-owned businesses" (emphasis added). He has also said, "If you are a minority entrepreneur, MBDA is your agency."[6]

22.     Federal law imposes upon the MBDA several responsibilities to assist minority businesses.

23.     The MBDA must provide federal assistance only to minority businesses through "resources relating to management," "technological and technical assistance," "financial, legal, and marketing services," and "services relating to workforce development." *See* 15 U.S.C. § 9511(1).

---

[4] Exec. Order No. 14091, 88 Fed. Reg. 10825 (Feb. 16, 2023), available <u>here</u>.

[5] U.S. Dept. of Commerce, *Remarks by U.S. Secretary of Commerce Gina Raimondo* (Sept. 21, 2022), available <u>here</u>.

[6] Forbes, *A Conversation with the first Under Secretary of Commerce for Minority Business Development* (Feb. 6, 2023), available <u>here</u>.

24.     The MBDA must also "promote the position of minority business enterprises in [ ] local economies" through programs for minority businesses related to procurement, management, technology, law, financing, marketing, and workforce development. *See* 15 U.S.C. § 9512(1).

25.     In addition to these general mandates, federal law requires the MBDA to establish a "Business Center Program" to: assist minority businesses in accessing capital, contracts, and grants, and creating and maintaining jobs; "provide counseling and mentoring to minority business enterprises"; and "facilitate the growth of minority business enterprises by promoting trade." 15 U.S.C. § 9522(1)–(3).

26.     Under the Business Center Program, the MBDA must "make Federal assistance awards to eligible entities to operate MBDA Business Centers," which must then "provide technical assistance and business development services, or specialty services, to minority business enterprises." 15 U.S.C. § 9523.

27.     These MBDA Business Centers may offer a variety of services to minority businesses under the law, including "referral services" and any "programs and services" necessary to accomplish the goals of MBDA (that is, helping minority businesses). 15 U.S.C. § 9524(a)(1).

28.     MBDA Business Centers must be operated in accordance with the requirements imposed by the MBDA through written agreements. *See* 15 U.S.C. §§ 9501(8), 9524. Moreover, the MBDA must be "substantially involved" in the operations of MBDA Business Centers. *See* 15 U.S.C. § 9524(h).

29.     Unsurprisingly, MBDA assistance is available only for select minority business enterprises owned by individuals of certain racial or ethnic backgrounds. To qualify as a "minority business enterprise," a business enterprise must be "not less than 51 percent-owned by 1 or more socially or economically disadvantaged individuals" and its management and daily business operations must be "controlled by 1 or more socially or economically disadvantaged individuals." 15 U.S.C. § 9501(9)(A). Likewise, the Infrastructure Act adopts similar provisions under the rules at 15 C.F.R. pt. 1400: "In order to be eligible to receive assistance from MBDA funded organizations, a concern must be a minority business enterprise. A minority business enterprise is a business enterprise that is owned or controlled by one or more socially or economically disadvantaged persons." 15 C.F.R. § 1400.1(b); 5 U.S.C. § 9501(15)(B).

30.     Only individuals belonging to the following racial or ethnic groups are presumed to be "socially or economically disadvantaged individuals" and therefore presumed to own a qualifying minority business: Black or African American, Hispanic or Latino, American Indian or Alaska Native, Asian, Native Hawaiian or Pacific Islander, 15 U.S.C. § 9501(15); and pursuant to 15 C.F.R. pt. 1400, other racial or ethnic groups (potentially overlapping) to include "Puerto-Ricans," "Spanish-speaking Americans," "Eskimos," "Hasidic Jews," and "Asian Indians." 15 C.F.R. § 1400.1. Any other group wishing to obtain status as "socially or economically disadvantaged," must make an "adequate showing by representatives of the group" to the federal government. *Id.*

- 9 -

31.    Business owners, including minorities, who are not members of the government's preferred racial or ethnic groups are presumed ineligible for MBDA Business Center Program services and other MBDA programs, and denied equal access to these services based on their disfavored race or ethnicity. Thus, while it is theoretically possible for a non-minority owned business to receive services, such businesses must make additional showings and overcome obstacles not applicable to minority businesses. These businesses are treated less favorably based on the race of their owner.

32.    In or about March 2023, Plaintiff Nuziard visited the local MBDA website for Dallas Fort Worth at www.mbdadfw.com and observed that the agency only serves "ethnic minority-owned businesses" owned and controlled by "African Americans, Hispanic, Asian, or Native American entrepreneurs." Dr. Nuziard is otherwise eligible for assistance, except that he is white.

33.    The following screenshot from the Dallas Fort Worth MBDA website lists assistance requirements:



34.    On the page for "Contact Us," the Dallas Fort Worth MBDA office further discriminates, demanding interested businesses to "explain" why they are not "51% owned and controlled by African Americans, Hispanic, Asian, or Native American entrepreneurs," as depicted below:

Does your business meet all of the following requirements: *

(check all that apply)

☐ Been in business for at least 2 years
☐ Represent high-growth industries
☐ Have sustainable, stable, & consistent revenue
☐ Are 51% owned and controlled by African Americans, Hispanic, Asian, or Native American entrepreneurs

If you did not check all the required boxes above, please explain.

35.     On January 20, 2023, United States Senator Tammy Baldwin joined Defendant Cravins in Milwaukee, Wisconsin, for a ribbon cutting ceremony celebrating the new Wisconsin MBDA Business Center. As a Wisconsin business owner, Plaintiff Piper is interested in the services offered by this MBDA office— counseling and mentoring, access to capital and contracts, and support for job creation and retention. But Mr. Piper read about the office and learned that because of his race, he is not eligible for assistance. This MBDA office, like all the others, is focused on "access" for "minority-owned businesses," as Defendant Cravins declared.[7]

---

[7] Office of Senator Baldwin, *Senator Baldwin Cuts Ribbon on Wisconsin MBDA Business Center to Support Minority-Owned Businesses* (Jan. 20, 2023), available here.

36.     On or about January 18, 2023, Plaintiff Bruckner accessed the MBDA website for the Orlando MBDA Business Center. Through the website, www.orlandombdacenter.com, Mr. Bruckner learned that the MBDA provides businesses with "access to capital," "access to contracts," and "access to markets." Given his business in government contracting, Mr. Bruckner was particularly interested in the "access to contracts" option.

37.     Mr. Bruckner then encountered the message prompt: "see if you qualify for no-cost business development services and trainings from the Orlando MBDA Business Center." Mr. Bruckner clicked on the link to "complete the intake form."

38.     In reviewing the MBDA client intake form, Mr. Bruckner observed a required question entitled, "Ethnicity." The inquiry appears as follows:

Ethnicity *

○ American Indian

○ Alaska Native

○ Asian

○ Asian Indian

○ Native American

○ Asian Pacific American

○ African American

○ Native Hawaiian or Other Pacific Islander

○ Hasidic Jew

○ Hispanic American

39.     Because the form did not include an option for "white" or "Caucasian," and he is not a Hasidic Jew, Mr. Bruckner contacted the MBDA by email on January 18, 2023, inquiring as follows: "Hello . . . I have a question. I do not see a box for disability, and I don't meet the other boxes on the intake form. What do I need to do?"

40.     In response, Kristi Jones, Office Manager for the Orlando MBDA Business Center wrote, "If you do not identify as one of the 'Ethnicity' dropdown options, we can refer you to one of our Strategic Partners for assistance with growing your business." Ms. Jones then sent another email stating, "Just to clarify, were you referring to the 'Ethnicity' dropdown options on the Intake Form?" Mr. Bruckner responded, "Yes." Ms. Jones then replied:

> The MBDA's focus is to help grow businesses owned by people of ethnic minorities, but we do partner with other companies that can assist all types of businesses. If none of the options in the "Ethnicity" dropdown on the MBDA Intake Form apply, we can refer you to our strategic partner 3D Strategic Management for assistance. I will have them reach out to you for further information. They will be sending you an email from info@3DStrategicManagement.com to follow-up by the end of next week.

41.     Ms. Jones's email signature line included a graphic referencing the MBDA and the Department of Commerce as follows:



42.    Orlando is not the only MBDA office in Florida: a second office is in Miami. But according to its website at www.miamimbdacenter.com, (and in compliance with federal law), the Miami MBDA similarly restricts its assistance to business owners of certain races.

43.    These are not the only MBDA Business Centers with racial qualifications. In fact, all MBDA Business Centers must provide resources and other benefits only to minority-owned businesses in compliance with federal law.

44.    Most, if not all, MBDA regional centers advertise that they will help businesses across the United States (though they may be located elsewhere), focusing attention on minority-owned businesses. Consequently, in addition to being excluded from MBDA assistance in their home states, Plaintiffs encounter barriers to equal

treatment nationwide due to the racially discriminatory nature of the MBDA's authorizing statutes and MBDA's policies.

45.    For example, like many MBDA regional offices, the New Mexico MBDA Business Center claims that it will help businesses "across the United States." But not all businesses. As shown in the screenshot below, the New Mexico MBDA website, http://www.nmmbda.com/about-us, explains that it won't help all races:



**Who We Serve**

We support mid-sized, minority-owned businesses with $500,000 or more in revenue that are pursuing growth throughout New Mexico and across the United States. Companies that are 51% owned or controlled by the following persons or groups of persons are eligible to receive technical business assistance services from the New Mexico MBDA Business Center: African American, Hispanic American, American Asian, Pacific Islander, Native American (including Alaska Natives, Alaska Native corporations, and Tribal entities), Asian Indian American, and Hasidic Jewish Americans. The Center will maximize its impact by focusing on high-growth sectors in which New Mexico excels: biosciences, aerospace and drone technology, energy, defense, construction, health care, optics and photonics, cybersecurity, and advanced manufacturing, and film and television.

46.    The Sacramento MBDA Business Center similarly requires business owners to "certify" that their business is minority-owned before even receiving any information from the MBDA. Below is a screenshot from its website, www.sacramentombda.com:



- 17 -

47.     The Sacramento MBDA Business Center's certification requirement is authorized by 15 U.S.C. § 9524(i) in which the Under Secretary is directed to "issue and publish regulations that establish minimum standards regarding verification of minority business enterprise status" for the MBDA Business Center Program.

48.     The Arizona MBDA Business Center, as another example, explains that it only serves members of certain minority racial groups. Below is a screenshot from its website at www.arizonambdacenter.com:

## Who We Serve

MBE Service Recipients - Organizations that are owned or controlled by persons or groups of persons who are members of the following demographics are the organizations that are considered MBEs for the purpose of our services:

African-American, Hispanic-American, American Asian and Pacific Islander, Native American (including Alaska Natives, Alaska Native Corporations and Tribal entities), Asian Indian American, and Hasidic Jewish American.

See 15 C.F.R. §§ 1400.1, 1400.2 and Executive Order 11625 (1969).

49.    Likewise, to even obtain a consult at the Denver MBDA, a business owner must check one of the boxes on this required intake form, available at www.denvermbdacenter.com:

MBE Eligibility Group *

☐ African American

☐ Asian American

☐ Hispanic American

☐ Native American

☐ Hasidic Jew

☐ Pacific Islander

50.    The Georgia MBDA Business Center similarly advertises help only for minority-owned businesses. As depicted below, the website, georgiambdabusinesscenter.org/how-we-help/securing-capital/, makes very clear "who we serve":



**Who We Serve**

Our clients are U.S. MBEs owned and operated by African Americans, Asian Americans, Hasidic Jews, Hispanic Americans, Native Americans, and Pacific Islanders.

Generally, we work with companies that have $500,000 or more in annual sales, but we are open to serve all MBEs. If you are not quite there yet, feel free to contact us for more information on the many resources available for small businesses.

51.     In sum, the MBDA does not assist any business owners falling outside the government's preferred racial and ethnic classifications. Plaintiffs are unable to obtain assistance from the MBDA (and MBDA offices providing MBDA programming) because of their race. This is a nationwide injury, stretching beyond the MBDA offices and centers in Texas, Wisconsin, and Florida. It is an injury stemming from the MBDA authorizing statutes and through Defendants' implementation of those statutes.

52.     Federal law does not contain any justification for the race or ethnicity discrimination in the statutes governing the MBDA. The Infrastructure Act establishing the MBDA contains no congressional findings or any other evidence indicating that the race and ethnicity classifications are narrowly tailored to support a compelling government interest.

53.     Accordingly, Defendants are administering a law authorizing a violation of the equal protection guarantees under the federal Constitution and 5 U.S.C. § 706.

54.     Unless Defendants are enjoined, Plaintiffs will lose out on the ability to be considered on equal footing for MBDA Business Center Program services and other services offered by the MBDA. Moreover, Plaintiffs will continue to suffer ongoing harm to their dignity because of the MBDA's unlawful race and ethnicity discrimination under the Infrastructure Act.

## COUNT 1 – EQUAL PROTECTION VIOLATION

55.     Plaintiffs reallege and incorporate the allegations set forth above as if fully set forth herein.

- 20 -

56.     The Constitution forbids discrimination by the federal government against any citizen because of his race or ethnicity. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 216, 223 (1995) (citations omitted).

57.     "The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013).

58.     "Racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination." *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 291 (1978). "Under strict scrutiny, the government has the burden of proving that racial classifications are narrowly tailored measures that further compelling governmental interests." *Johnson v. California*, 543 U.S. 499, 505 (2005) (citation omitted).

59.     As codified at the definitions at 15 U.S.C. § 9501, including §§ 9501(9) and (15), the Infrastructure Act imposes race and ethnicity eligibility requirements for the MBDA Business Center Program and other MBDA programs and services.

60.     Defendants are responsible for implementing the MBDA Business Center Program and other MBDA services and are imposing the statutory and regulatory race and ethnicity eligibility requirements.

61.     Plaintiffs own and operate small businesses but because of their race, they are ineligible for services.

62.     The race and ethnicity eligibility requirements for the MBDA Business Center Program, as defined at 15 U.S.C. § 9501, are unconstitutional because they

violate the equal protection guarantee of the United States Constitution. These race and ethnicity classifications are not narrowly tailored to serve a compelling governmental interest.

63.    Plaintiffs have sustained harms to their dignity by visiting MBDA websites (and in one case, emailing directly with MBDA staff) and learning that the United States government, through Defendants' actions, does not consider them equal based on their race. Plaintiffs are further injured by the term "minority" in the name, statutes and regulations relating to MBDA, which refers to certain, preferred racial groups and is a clear indication that Defendants only intend to help business owners of certain racial minorities. This public proclamation of racial preference is an injury to the dignity of each Plaintiff.

64.    Therefore, this Court should set aside all racial and ethnic classifications defined in 15 U.S.C. § 9501, and which are implemented through the racial and ethnic preferences found in 15 U.S.C. §§ 9511, 9512, 9522, 9523, and 9524 and/or otherwise applied to the MBDA Business Center Program and other MBDA services.

## COUNT 2 – VIOLATION OF THE
## ADMINISTRATIVE PROCEDURE ACT

65.    Plaintiffs reallege and incorporate the allegations set forth above as if fully set forth herein.

66.    Under the Administrative Procedure Act, courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be—contrary to [a] constitutional right." 5 U.S.C. § 706(2)(B).

67.     Pursuant to the rule at 15 C.F.R. § 1400.1, the Infrastructure Act imposes race and ethnicity eligibility requirements for the MBDA Business Center Program and other MBDA programs and services.

68.     Defendants are responsible for implementing the MBDA Business Center Program and other MBDA services and are imposing the regulatory race and ethnicity eligibility requirements in violation of equal protection guaranteed under the Fifth Amendment's Due Process Clause.

69.     These are unlawful racial and ethnic classifications because they are not narrowly tailored measures that support a compelling government interest.

70.     Therefore, the Court should set aside this regulation as unconstitutional.

## RELIEF REQUESTED

Plaintiffs respectfully request that this Court:

A.     Enter a judgment declaring that the Minority Business Development Agency is unconstitutional and in violation of 5 U.S.C. § 706(2)(B) to the extent it provides Business Center Program services or other benefits and services based on race or ethnicity;

B.     Enter a preliminary and then permanent injunction prohibiting Defendants from imposing the racial and ethnic classifications defined in 15 U.S.C. § 9501 and implemented in 15 U.S.C. §§ 9511, 9512, 9522, 9523, 9524, and 15 C.F.R. § 1400.1 and/or as otherwise applied to the MBDA Business Center Program and other MBDA programs and services, and additionally enjoining Defendants from using the

term "minority" to advertise or reference their statutorily authorized programs and services;

       C.     Award Plaintiffs their attorney fees under 28 U.S.C. § 2412 or other relevant laws; and

       D.     Grant Plaintiffs such other and further relief as the court deems appropriate.

       Dated this 20th day of March 2023.

                         Respectfully submitted,

                         THE LAW OFFICE OF JASON NASH, P.L.L.C.

                         s/ *Jason C. Nash*
                         Jason C. Nash (Bar No. 24032894)
                         601 Jameson Street
                         Weatherford, TX 76086
                         Telephone: (817) 757-7062
                         jnash@jasonnashlaw.com

                         WISCONSIN INSTITUTE FOR
                         LAW & LIBERTY, INC.

                         Richard M. Esenberg *(pro hac vice forthcoming)*
                         Daniel P. Lennington *(pro hac vice forthcoming)*
                         Cara M. Tolliver *(pro hac vice forthcoming)*
                         330 East Kilbourn Avenue, Suite 725
                         Milwaukee, WI 53202
                         Telephone: (414) 727-9455
                         Facsimile: (414) 727-6385
                         Rick@will-law.org
                         Dan@will-law.org
                         Cara@will-law.org

                         *Attorneys for Plaintiffs*

## VERIFICATION

1.    I am a plaintiff in this case.

2.    I have personal knowledge of myself, my activities, my intentions, and my business, including those set out in the foregoing Verified Complaint. If called upon to testify, I would competently testify as to the matters relevant to me and my claims.

3.    I verify under the penalty of perjury under the laws of the United States that the factual statements in this Verified Complaint concerning myself, my activities, my intentions, and my business are true and correct.

Dated: __13 March 2023__          Signature_____

Printed Name: __Jeffrey L Nuziard_____

## VERIFICATION

1.     I am a plaintiff in this case.

2.     I have personal knowledge of myself, my activities, my intentions, and my business, including those set out in the foregoing Verified Complaint. If called upon to testify, I would competently testify as to the matters relevant to me and my claims.

3.     I verify under the penalty of perjury under the laws of the United States that the factual statements in this Verified Complaint concerning myself, my activities, my intentions, and my business are true and correct.

Dated: __3/13/23__          Signature _____

Printed Name: __MATTHEW PIPER__

## VERIFICATION

1.     I am a plaintiff in this case.

2.     I have personal knowledge of myself, my activities, my intentions, and my business, including those set out in the foregoing Verified Complaint. If called upon to testify, I would competently testify as to the matters relevant to me and my claims.

3.     I verify under the penalty of perjury under the laws of the United States that the factual statements in this Verified Complaint concerning myself, my activities, my intentions, and my business are true and correct.

Dated: ___3-13-2023___      Signature____*G L*____

Printed Name: _____*Christian Bruckner*_____