UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**JEFFREY NUZIARD, ET AL.,**

  Plaintiffs,

v.                                                    No. 4:23-cv-00278-P

**MINORITY BUSINESS DEVELOPMENT AGENCY, ET AL.,**

  Defendants.

## ORDER

By Order dated March 5, 2024, the Court ruled on the Parties' cross-motions for summary judgment. *See* ECF No. 60. Plaintiffs won, and their Complaint included a claim for attorneys' fees. *See* ECF No. 1 at 5, 24. Thus, after granting summary judgment, the Court ordered Plaintiffs to move for any fees and costs they intend to seek. *See* ECF No. 63. The Parties filed briefing on Plaintiffs' request for fees and costs, which is now ripe for disposition. *See* ECF Nos. 64, 67, 70. Having considered the briefs and analyzed the relevant time records, the Court **GRANTS** Plaintiffs' request for attorneys' fees and costs and **AWARDS** $357,542.98 in **attorneys' fees** and $423.66 in **costs**.

### LEGAL STANDARD

"Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010). Courts "recognize[] departures from the American Rule only in 'specific and explicit provisions for the allowance of attorneys' fees under selected statutes.'" *Baker Botts, LLP v. ASARCO, LLC*, 576 U.S. 121, 126 (2015) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 260 (1975)). One such exception is the Equal Access to Justice Act ("EAJA"). *See Astrue v. Ratliff*, 560 U.S. 586, 591 (2010); *see generally* 28 U.S.C. § 2412. The

EAJA waives the Government's presumptive immunity from claims for fees and costs in certain actions against federal governmental entities. *See Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554, 559 (5th Cir. 2015).

Distilling relevant precedent, a claim for fees under the EAJA must show: (1) the claimant is the "prevailing party"; (2) the Government's position was not "substantially justified"; (3) "no special circumstances make an award unjust"; and (4) the motion for fees was timely. *See Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990). The first prong speaks for itself; the moving party has the burden for the second and third. *Scarborough v. Principi*, 541 U.S. 401, 414 (2004). However, "the Supreme Court's pronouncement that statutes waiving the government's general immunity from attorneys' fee claims must be 'construed strictly in favor of the sovereign' and not 'enlarge[d] . . . beyond what the language requires.'" *Hodge v. U.S. Dep't of Just.*, 929 F.2d 153, 159 (5th Cir. 1991) (citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86 (1983)).

## ANALYSIS

As Plaintiffs note, Defendants "concede that Plaintiffs were the prevailing party and that Plaintiffs' attorneys should receive an hourly rate of $241.91/hour." ECF No. 70 at 2. Broadly speaking, Defendants contest Plaintiffs' request on two grounds. *First*, they argue Plaintiffs aren't entitled to recover fees because the Government's position in this case was "substantially justified." *See* ECF No. 67 at 10–19. *Second*, should the Court disagree, the Government says it was overkill for Plaintiffs' counsel to bill 1,498 hours on this case. *See id.* at 20–29. As explained below, neither argument defeats Plaintiffs' request for fees. However, the Government's second argument persuades that certain offsets are appropriate vis-à-vis the fee award requested.

### A. The Government's position was not substantially justified.

The EAJA gifts litigants with a shot at attorneys' fees and trial courts with an amorphous standard. As noted above, the EAJA entitles prevailing parties to reasonable attorneys' fees "unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). The phrase "substantially justified" carries with

2

it "an obvious need to elaborate."[1] One hint comes from a House Committee Report discussing the EAJA, which noted that "[s]everal courts have held correctly that 'substantial justification' means more than merely reasonable." H.R. Rep. No. 99–120, p. 9 (1985). As the Report observed: "Because in 1980 Congress rejected a standard of 'reasonably justified' in favor of 'substantially justified,' the test must be more than mere reasonableness." *Id.* Yet that Report came years after the EAJA was passed and never articulated a standard. Moreover, even if it did, "more than mere reasonableness" is none clearer than "substantially justified."

The Fifth Circuit's jurisprudence in EAJA fees cases has stressed that "[t]he test of whether or not a government action is substantially justified is essentially one of reasonableness." *Baker v. Brown*, 839 F.2d 1075, 1080 (5th Cir. 1988) (citation omitted). While higher than "merely reasonable," the Fifth Circuit has emphasized that "the government has the burden of showing that its position in every stage of the proceeding was substantially justified by demonstrating that its actions had a reasonable basis in both law and fact." *Id.* Yet "[t]o be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness." *Pierce*, 487 U.S. at 566. And the fact that other courts have agreed or disagreed with the Government's position "does not establish whether its position was substantially justified." *Sims v. Apfel*, 238 F.3d 597, 602 (5th Cir. 2001) (cleaned up); *see also W.M.V.C. v. Barr*,

---

[1]*Pierce v. Underwood*, 487 U.S. 552, 564 (1988). As the Supreme Court observed:
> The broad range of interpretations described above is attributable to the fact that the word "substantial" can have two quite different—indeed, almost contrary—connotations. On the one hand, it can mean "[c]onsiderable in amount, value, or the like; large," Webster's New International Dictionary 2514 (2d ed. 1954)—as, for example, in the statement, "He won the election by a substantial majority." On the other hand, it can mean "[t]hat is such in substance or in main," *ibid.*—as, for example, in the statement, "What he said was substantially true." Depending upon which connotation one selects, "substantially justified" is susceptible of interpretations ranging from the Government's to the respondents'.

*Id.* at 564.

926 F.3d 202, 208 (5th Cir. 2019) (noting "the mere fact that the government lost . . . does not alone demonstrate that its position was not substantially justified" (cleaned up)).

Harmonizing these discordant precedents, the clearest articulation of "substantially justified" comes from *Barr*, where the Fifth Circuit held that substantially justified "does not mean 'justified to a high degree,' but rather 'justified in substance or in main'—that is, justified to a degree that could satisfy a reasonable person." 926 F.3d at 208. However a trial court applies that standard, the analysis must "treat[] the case as an inclusive whole, rather than as atomized line-items." *Jean*, 496 U.S. at 162. Doing so here, the Court finds the Government's position throughout this litigation was not substantially justified.

The Government says its position was substantially justified because it had a reasonable basis for its arguments regarding standing (ECF No. 67 at 11–14), compelling interests (*id.* at 14–16), and narrow tailoring (*id.* at 16–19). It further contends its position was substantially justified because Plaintiffs presented an ostensibly "novel challenge" to the "newly enacted minority business development act." *Id.* at 19–20 (cleaned up). As a starting point, the Court agrees that the Government had a reasonable basis for its standing arguments. *See* ECF No. 60 at 9–37. And the Court recognizes the challenge of defending "newly enacted" government legislation/programs. However, "[t]his is a case about presumptions." ECF No. 60 at 37. Because its "hornbook law that strict scrutiny applies to race-based classifications," *see id.* at 45, the Court's substantially-justified analysis is framed more by compelling interests and strict scrutiny than other considerations. Thus, even if the Government took certain tenable positions in this case, their overarching position was not substantially justified when "treating the case as an inclusive whole." *Jean*, 496 U.S. at 162.

1. <u>The Government's position regarding compelling interests was not substantially justified.</u>

As explained in the Court's summary-judgment order, only a small subset of the Government's claimed interests was sufficiently compelling for strict scrutiny purposes. *See* ECF No. 60 at 47–61. The Court exhaustively analyzed the record to find evidence that could

4

support the Government's claimed compelling interests. *See id.* at 53. In doing so, the Court found "only .06% of the relevant record identifies anything close to government participation," which was required for the compelling-interest analysis. *Id.* at 53–54. As noted in that order, "[f]or strict scrutiny purposes, that dog won't hunt." *Id.* at 54. And it won't for EAJA fees purposes, either.

To be fair, sometimes you have to make the best argument you have to advance your client's interests. As such, the Government's arguments weren't patently frivolous. But strict scrutiny is a "daunting two-step examination." *Students for Fair Admissions, Inc. v. Pres. & Fellows of Harv. Coll.*, 600 U.S. 181, 206 (2023). If the standard for fees under the EAJA is "essentially one of reasonableness," *Brown*, 839 F.2d at 1080, the Court struggles to see the reasonableness in arguing an already-tough position based on .06% of the record. As such, while the Court doesn't fault the Government for taking that position, it is loath to label the position "substantially justified." *See* 28 U.S.C. § 2412(d)(1)(A). However, the Government's problems compounded when it came to narrow-tailoring. Indeed, as explained below, the Government's narrow-tailoring arguments came close to downright frivolous.

2. The Government's position regarding narrow tailoring was not substantially justified.

The Court's summary-judgment order detailed the myriad ways the MBDA's presumption is not narrowly tailored. *See* ECF No. 60 at 61–75. While unnecessary to restate its conclusions here, the Court reiterates that the MBDA's presumption (1) is under- and over-inclusive (*id.* at 62–66), (2) is based on impermissible stereotypes (*id.* at 66–68), (3) has no logical endpoint (*id.* at 66–69), was crafted without properly weighing necessity and available alternatives (*id.* at 69–72), is inflexible and not durationally limited (*id.* at 72–74), and necessarily harms third parties (*id.* at 74). The Government zealously argued in favor of a ramshackle presumption created piecemeal by grouping various races/ethnicities together with little thought behind their inclusion and almost no considerations beyond the color of their skin. "Under 15 U.S.C. § 9501(15)(B), Oprah Winfrey is presumptively disadvantaged, while Plaintiffs and even more disadvantaged Americans are not." *See* ECF

5

No. 60 at 65. Creative lawyering and "best arguments" aside, that very premise lacks "a reasonable basis in law or facts." *See Brown*, 839 F.2d at 1080. Or in common sense, for that matter.

Tabling compelling-interest concerns, the Parties knew from the start that the ruling in *SFFA* would impact this case. The Supreme Court was clear that "race may never be used as a 'negative'" by federal governmental entities and "may not operate as a stereotype." *SFFA*, 600 U.S. at 216. To remove all doubt, the Court clarified that "[a] benefit provided to some applicants but not to others necessarily disadvantages the former group at the expense of the latter." *Id.* at 219. As the Court queried, "How else but 'negative' can race be described if, in its absence, members of some racial groups would be admitted in greater numbers than they otherwise would have been?" *Id.* at 219. The Court's decision in *SFFA* stressed that "at some point [such race-based classifications] must end." *Id.* at 216. That should have been the MBDA's sign to press pause on its presumption and consider alternative routes forward. Instead, the Government essentially argued—in contravention of binding Supreme Court precedent—that the MBDA is narrowly tailored. *See* ECF No. 40. But the Court is not at liberty to disregard opinions issued by the highest court in the land. Thus, the Government's arguments did not persuade at summary judgment, they don't persuade now, and they aren't substantially justified. Indeed, its not a stretch to invert the wording and describe the Government's narrow-tailoring arguments as "substantially *un*justified."

However you phrase it, the Government's position does not defeat an award of attorneys' fees here. *See* 28 U.S.C. § 2412(d)(1)(A). To be sure, the fact that the Court granted summary judgment for Plaintiffs does not make the Government's position substantially unjustified. *Barr*, 926 F.3d at 208. For instance, the Court's prior opinion discussed Justice Stevens' hypothetical of a federal program that used race to help victims of sickle cell anemia. *See* ECF No. 60 at 65 (discussing *Bush v. Vera*, 517 U.S. 952, 984, 1032 (1996)). Had the Government made similar arguments in defense of a more arguably narrowly-tailored program, their position would be substantially justified. But the Court must disagree with the Government's contention that "[a] reasonable person"

could buy their narrow-tailoring arguments here. *See* ECF No. 67 at 19. Because the Government's narrow-tailoring arguments were not "justified in substance or in main—that is, justified to a degree that could satisfy a reasonable person," *see id.*, they do not defeat an award of attorneys' fees here.

### B. Plaintiffs are entitled to $357,542.98 in attorneys' fees.

Having found the Government's position was not substantially justified, the Court now turns to the Government's reasonability arguments. While the above arguments concerned the propriety of attorneys' fees in general, the Government's reasonability arguments concern the proper *amount* of fees to be awarded. It is uncontested that Plaintiffs are the "prevailing party." *See* ECF No. 60. As such, the only other factors bearing on the propriety of fees are (1) whether the Government's position was "substantially justified"; (2) whether "special circumstances make an award unjust"; and (3) whether Plaintiffs' motion for fees was timely. *See Jean*, 496 U.S. at 158. Because the Parties don't meaningfully contest the second or third prongs, the Court evaluates the Government's reasonability arguments as part of its lodestar analysis. *See generally Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) (articulating considerations to determine reasonability of attorneys' fees).

Once a trial court determines fees are appropriate under the EAJA, it turns to the familiar two-step process articulated in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Court first determines the "lodestar," which is the "reasonable number of hours expended on the litigation" multiplied by "the reasonable hourly rates for the participating lawyers." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). That figure is the presumptively reasonable attorneys' fee award for a given action. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). However, the Court must next determine if the lodestar should be adjusted up or down based on the familiar *Johnson*

factors.[2] *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993). The resulting adjusted lodestar is the appropriate fee award. *Id.*

For any fee award, the relevant attorneys must have expended a reasonable amount of time and charged a reasonable hourly rate. *See League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1987); *see also* 28 U.S.C. § 2412(b); *Abrams*, 805 F.2d at 535–36. Plaintiffs' counsel has spent 1,498 hours litigating this action to date. *See* ECF No. 70 at 5. The Government says that's unreasonable for a number of reasons. *First*, the Government says Plaintiffs cannot recover for "clerical work" ostensibly billed by Plaintiffs' lawyers. *See* ECF No. 67 at 21. *Second*, the Government says Plaintiffs cannot recover for "vague entries" in the relevant billing records. *Id.* at 22. *Third*, the Government argues Plaintiffs cannot recover for "excessive hours" Plaintiffs' lawyers devoted to certain tasks. *Id.* at 24. On a related note, the Government contends much of the work performed by Plaintiffs' lawyers was "duplicative" and "redundant" and otherwise unnecessary considering the task performed. *Id.* at 25. Unsurprisingly, Plaintiffs disagree across the board. *See* ECF No. 70. To determine the lodestar, the Court addresses each of the Government's requested deductions below. *See* ECF No. 67 at 20–30.

1. <u>A twenty-hour deduction is warranted for clerical work performed by Plaintiffs' lawyers as reflected in block-billed entries.</u>

Plaintiffs submitted contemporaneous billing records evincing 1,498 hours expended on this case. *See* ECF No. 64. The Government first seeks a deduction from Plaintiffs' hours for ostensibly "clerical" work

---

[2]The Johnson factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney by acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See* 488 F.2d at 718.

8

reflected in those records. *See* ECF No. 67 at 21. To this end, the Government's briefing points to clearly established case law precluding recovery for attorneys' time spent on such work. *See id.* (collecting cases); *see generally Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 536 (5th Cir. 1986) (noting attorneys' fees should be awarded for "legal work in the strict sense" and not for "clerical work that happened to be performed by a lawyer"). To support its argument, the Government provides a helpful chart of the allegedly clerical work in Plaintiffs' time entries. *See* ECF No. 67-3. Having reviewed the contested entries and evaluated the Parties' briefing, the Court concludes a deduction of twenty hours would reflect a reasonable expenditure of time on the enumerated tasks.

As a starting point, the Court notes the clerical/non-clerical distinction is far too dichotomous and frequently unhelpful. The very nature of the job for attorneys, paralegals, and support staff defies categorical thinking and does not lend itself to bright-line rules. *See generally Walker v. U.S. Dep't of Housing and Urban Dev.*, 99 F.3d 761, 771 n.10 (5th Cir. 1996) (outlining the contours of historically "clerical" work). Most of the contested entries either toe the clerical/non-clerical line or fall cleanly in the "non-clerical" taxonomy. For instance, the Government's complaints about entries for "communication with client regarding case status," "client call," "finaliz[ing] all Response documents," and "research" fall on deaf ears. *See* ECF No. 67-3 at 2–3. Those tasks are traditionally performed by attorneys and the corresponding time should rightly be billed. *See Walker*, 99 F.3d at 771 n.10. That said, certain items in the contested entries appear more clerical than non-clerical. For instance, Plaintiffs' lawyers billed for things like finalizing billing records, filing documents with the court, organizing attachments for certain pleadings, arranging travel logistics, and whatever "attend[ing] to documents" means. *See id.* While steering clear of categorical thinking, the Court fails to see why those tasks were performed by lawyers rather than capable support staff. Yet sometimes attorneys do things support staff could handle. The Court will never fault an attorney for handling such work, but the law is clear that attorneys' fees are not to be awarded for it. *See, e.g., Bowman v. Prida*

9

*Constr., Inc.*, 568 F. Supp. 3d 779, 787 (S.D. Tex. 2021) (Brown, J.) (collecting cases) (noting "[c]lerical work, or secretarial tasks, include the filing of legal documents, the calendaring of events, and communications regarding scheduling issues") (quotation marks and citation omitted). Accordingly, a moderate deduction seems appropriate to ensure the Court's analysis reflects the "reasonable" time expended.

The Government's chart notes that many entries cannot be separated on a task-specific basis because Plaintiffs' lawyers block-billed their time. *See* ECF No. 67-3. The Government points to several cases where misuse of this practice resulted in reductions to the corresponding fee award. *See* ECF No. 67 at 27. While the analysis is always case-specific, courts in the Northern District of Texas have granted percentage reductions where block billing hindered judicial review of the relevant entries. *See Franciscan Alliance, Inc. v. Becerra*, 681 F. Supp. 3d 631, 642 (N.D. Tex. 2023) (O'Connor, J.) (collecting cases). But not all block-billing is the same. *See id.* Here, while certain bulky time entries hindered the Court's review, such hindrances were the exception, rather than the rule. *See* ECF No. 64. What matters is not a formulaic approach to logging one's time, but whether the chosen format clearly articulates the subject matter of work performed. *See Becerra*, 681 F. Supp. 3d at 642 (quoting *Wyndham Props. II, Ltd. v. Buca Tex. Rests., LP*, No. 4:22-cv-00166-BP, 2023 WL 2392090, at *3 (N.D. Tex. Mar. 7, 2023) (Cureton, M.J.)). And the record largely communicates the subject matter of work done by Plaintiffs' lawyers here.

Nevertheless, certain "clerical" tasks were included in block-billed entries. *See* ECF Nos. 67 at 22; 67-3. While the aggregate time spent on such clerical tasks may be less than twenty hours, the Court must err on the side of caution to ensure its award of fees includes no unrecoverable time. To this end, the Court rounded up its estimation of time required for the clerical work in the records submitted by Plaintiffs' counsel. While Plaintiffs may protest that the clerical tasks took less than twenty hours and the Court thus subtracts recoverable time, that's a risk they ran by including clerical tasks in block-billed entries alongside non-clerical tasks. *See Becerra*, 681 F. Supp. 3d at 642. Accordingly, the Court finds a twenty-hour reduction appropriate for

10

certain clerical work reflected in the entries but does not find an across-the-board reduction warranted.

    2.  <u>No deduction is warranted for allegedly vague time entries.</u>

The Government next seeks a deduction for allegedly "vague" entries in Plaintiffs' billing records. *See* ECF No. 67 at 22–23. It is a bedrock principle in attorneys' fee cases that "[a] party may not recover for time that is inadequately documented." *Combs v. City of Huntington*, 829 F.3d 388, 392 (5th Cir. 2016). Simply put, if you don't show your work, you won't recover your fees. *See Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006). Once again, the Government helpfully provides a chart of the allegedly vague entries. *See* ECF No. 67-4. Having evaluated that chart and the Parties' briefing, the Court finds no deduction warranted for the relevant entries.

The Government nitpicked the billing records provided by Plaintiffs' lawyers to advocate an across-the-board percentage penalty for "vague" entries, along with line-item deductions. *See* ECF No. 67 at 27–28. To be sure, the Court can't accept lawyers' time entries at face value. *See Kellstrom*, 50 F.3d at 324 (collecting cases). But "practical considerations of the daily practice of law . . . preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour." *Id.* Here, the contested entries are sufficiently clear to permit meaningful judicial review. *See* ECF No. 67-4; *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (noting the lodestar must be sufficiently documented to permit meaningful judicial review). For instance, the Government contends that items like "communications with client regarding case status," "confer with colleagues regarding case strategy," "review emails from clients," "planning regarding deposition," and "email lead counsel, Mr. Lennington, regarding initial filing matters" are all too vague. *See* ECF No. 67-4 at 2–3. Having reviewed those and the other entries submitted by Plaintiffs' counsel, the Court disagrees.

Insofar as Plaintiffs' lawyers aren't required to "write a book" for each hour that might divulge strategic information or jeopardize the attorney-client privilege, *see Kellstrom*, 50 F.3d at 324, the Court is more

11

forgiving than the Government vis-à-vis the contested entries. As long as the entries permit meaningful judicial review—which they do—more granular details are unnecessary.[3] *See Becerra*, 681 F. Supp. 3d at 642 ("Although counsel is not required to record in great detail how each minute of his time was expended, at least counsel sould identify the general subject matter of his time expenditures." (cleaned up)). Accordingly, the Court finds no deduction warranted for the allegedly vague entries.

3. <u>No deduction is warranted for excessive, duplicative, or redundant time entries.</u>

Again seeking line-item deductions and a percentage penalty, the Government says many of Plaintiffs' time records reflect excessive, duplicative, or redundant work. *See* ECF No. 67 at 24–26. This is the Government's least persuasive argument. For entry after entry, the Government complains of time expenditures one would expect for sophisticated constitutional litigation. To take just the examples highlighted in the Government's brief, the Government complains that a head litigator for Plaintiff's team spent 144 hours over nine days preparing for the preliminary injunction hearing last May. *See* ECF No. 67 at 24. While that's definitely a grind, the Court would have suspicions over counsel who did *not* spend a similar amount of time preparing for a hearing of such importance. Had the same lawyer spent the same amount of time preparing for a motion-to-compel hearing, that would be a different story. But 144 hours over that time span is simply evidence that the relevant lawyer was zealously advancing her clients' interests at the injunction hearing. Relatedly, the Government pushes back on the same attorney billing 107.5 hours to prepare Plaintiffs' Motion for Preliminary Injunction. Yet considering the difficulty of obtaining such extraordinary relief and the quality of the work product, the Court is

---

[3]On this point the Government also critiques certain time entries by attorney Jason Nash after the Court's summary judgment ruling. *See* ECF No. 67 at 23 (averring that "Mr. Nash provides no documentation of the work he has performed" for post-ruling time entries). Yet Mr. Nash provided a sworn statement regarding those very entries. *See* ECF No. 70 at 6. Accordingly, the Court disregards the Government's argument with respect to those entries and finds no deduction appropriate for Mr. Nash's post-ruling work.

surprised that number is not *higher*. These examples typify the broader issue, as the Government's protestations are unsupported by any facially excessive time entries.

The Government's argument is not merely quantitative, but qualitative as well. In particular, the Government contends Plaintiffs' lawyers billed out for "duplicative" or "redundant" work, the time spent being largely irrelevant. *See* ECF N0. 67 at 26–29. Their examples are few and unremarkable. *See id.* Indeed, the Government's protests are largely predicated on certain tasks being billed by multiple attorneys— one as the lead and others with supporting roles. *See* ECF No. 70 at 8–9. Missing from the Government's examples are any time entries that reflect "double counting" for identical tasks or otherwise suggest the attorneys billed for work that didn't move the case forward. *See Watkins*, 7 F.3d at 457 (deducting "hours spent on lobbying-related activities," "travel time," pre-litigation time," and time "spent on press conferences," in addition to facially excessive/duplicative entries). Absent far more problematic records, the Court finds no deduction warranted for excessive, duplicative, or redundant time entries.

For the above reasons, the Court determines $357,542.98 is the appropriate lodestar for this case, as it represents the reasonable number of hours expended by Plaintiffs' lawyers multiplied by their (uncontested) reasonable hourly rate:

$$(1{,}498 - 20) \times \$241.91 = \$357{,}542.98$$

Having calculated the lodestar, the Court must next ask whether that figure should be adjusted based on the *Johnson* factors. *See Watkins*, 7 F.3d at 459. As explained below, the Court finds no adjustment warranted to the above lodestar.

4. <u>The lodestar should not be adjusted based on the *Johnson* factors.</u>

As noted above, courts in the Fifth Circuit consider the twelve *Johnson* factors to determine if a lodestar should be adjusted upward or downward. *See id.* But not all *Johnson* factors pack the same punch. "[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation, and ability of counsel."

*Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). Having evaluated the *Johnson* factors with an eye toward those important considerations, the Court finds no adjustment warranted for this case.

Here, the first, second, third, fifth, seventh, eighth, and ninth *Johnson* factors suggest the lodestar is appropriate; the rest are neutral.[4] The first *Johnson* factor considers "the time and labor required" for a given case. *See* 488 F.2d at 718. This case has necessitated extraordinary work from both sides' counsel since March 20, 2023. *See generally* ECF No. 1. Plaintiffs' attorneys have worked hard since then, though their efforts in this Court will not extend further to a trial. *See* ECF No. 62 (noting the remaining Plaintiff that could proceed to trial does not wish to do so in light of the Court's summary-judgment ruling). Accordingly, this factor supports the lodestar as-is.

The second *Johnson* factor considers the novelty/difficulty of questions presented. *See* 488 F.2d at 718. This is a bit of a Catch-22. On one hand, the illogic behind the MBDA's presumption and the clarity of *SFFA* rendered the substantive constitutional analysis relatively easy. *See* ECF No. 60 at 37–75. On the other hand, as the Government notes, this case represented a "novel challenge" to the "newly enacted minority business development act." ECF No. 67 at 19–20. The challenge was not so much in explicating case law, but in applying precedent to the unique facts of this case. Accordingly, the second *Johnson* factor does not support adjusting the lodestar. On a related note, the third *Johnson* factor considers the skill required to prosecute this action. *See* 488 F.2d at 718. The skill required to take on the federal government in court should not be understated. However, nothing unique to this case suggests this factor supports an upward adjustment to the presumptively reasonable lodestar. *See Migis*, 135 F.3d at 1047. Absent

---

[4]The neutral factors are "preclusion of other employment by the attorney by acceptance of the case" (which the Parties don't mention), "whether the fee is fixed or contingent" (which is inapplicable here), "the 'undesirability' the case" (which the Parties also don't mention), the "nature and length of the professional relationship with the client" (which does not appear to extend beyond this case's inception), and "awards in similar cases" (of which the data is too sparse to support adjustment up or down). *See Johnson*, 488 F.2d at 718.

extraordinary circumstances to compel a different conclusion, the Court determines this factor supports the current lodestar.

The skill of Plaintiffs' lawyers is reflected in their requested hourly rate of $241.91/hour. *See* ECF No. 70 at 2. That leads to the fifth *Johnson* factor, which asks if the lodestar is consistent with customary rates expected in similar cases in a given jurisdiction. *See* 488 F.2d at 719. If anything, an hourly rate of $241.91 is low for attorneys of this caliber practicing in the Dallas-Fort Worth metroplex. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984) (noting a fee's reasonability is best understood with respect to "prevailing market rates in the relevant community"). But nonetheless, that's the figure Plaintiffs propose, and the Government does not challenge its reasonability or its congruence with customary fees. *See* ECF No. 70 at 2 (noting the Government concedes "that Plaintiffs' attorneys should receive an hourly rate of $241.91/hour"). While on the low end, that figure is not beyond the bounds of the bell curve vis-à-vis customary rates for litigation of comparable sophistication. *See* ECF No. 64-1 at 7–8 (noting the rates of Plaintiffs' counsel "were not in excess of the fees customarily charged in the North Texas legal community by lawyers and firms of comparable experience"). Accordingly, this factor also supports a non-adjusted lodestar.

Turning to the remaining *Johnson* factors that support a non-adjusted lodestar, the seventh factor looks to "time limitations imposed by the client or circumstances." *See* 488 F.2d at 719. Here, Plaintiffs sought injunctive relief, which is an inherently time-sensitive remedy. *See Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996). However, Plaintiffs faced no dire emergency that would expedite this case to an extent warranting upward adjustment. *See id.* This naturally segways to the eighth *Johnson* factor, which considers "the amount involved and the results obtained." *See* 488 F.2d at 719. In addition to declaratory relief, Plaintiffs got the injunctive relief they sought, albeit in a different form. *See* ECF No. 60 at 76–93. For obvious reasons, a party's success has important bearing on the propriety of a given fees award. *See Migis*, 135 F.3d at 1047. Yet nothing surprising in this case

15

indicates Plaintiffs' success warrants an upward adjustment to the lodestar. *See id.*

Turning to the final non-neutral *Johnson* factor, the Court evaluates "the experience, reputation, and ability of the attorneys." *See* 488 F.2d at 719. Here, the skills and well-earned reputation of Plaintiffs' lawyers speak for themselves. Indeed, Plaintiffs' lawyers have crafted a practice specializing in civil-rights cases just like this. *See* ECF No. 64-1 at 8. Under some circumstances, "[a]n attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others, provid[ed] his ability corresponds with his experience." *Johnson*, 488 F.2d at 719. While that would potentially justify a higher award of fees, it does not support an upward adjustment to the lodestar without any other considerations suggesting the lodestar is too low.

For the above reasons, the Court finds the unadjusted lodestar to be a reasonable fee award for this case. Accordingly, the Court **GRANTS** $357,542.98 in attorneys' fees reasonably incurred by Plaintiffs in prosecuting this action.

### C. Plaintiffs are entitled to $423.66 in costs.

Though the Government did not put up a fight regarding Plaintiffs' small request for costs, the Court notes that Plaintiffs are entitled to full recovery of the costs requested. The Government's only objection to Plaintiffs' costs is tethered to the substantial-justification arguments addressed above. *See* ECF No. 67 at 14 ("Plaintiffs thus are not entitled to fees and costs under the EAJA.") Having addressed those arguments earlier in this Order, the Court notes that the EAJA sanctions recovery of costs incurred by the prevailing party in cases of this nature. *See* 28 U.S.C. § 2412(d)(1)(A). Plaintiffs seek $423.66, which "is derived from a $402.00 filing fee for the Complaint . . . and two $10.83 parking charges for Plaintiffs' counsel." ECF No. 64-1 at 9 n.4. "In addition to attorneys' fees, the EAJA provides for the recovery of 'other expenses,' which includes paralegal fees and travel expenses." *Gate Guard Servs., LP v. Perez*, 14 F. Supp. 3d 825, 841 (S.D. Tex. 2014) (Rainey, J.) (citing 28 U.S.C. § 2412(d)(1)(A)) (collecting cases). Filing fees and parking slips

fit the bill. Accordingly, the Court **GRANTS** Plaintiffs' request for costs in its entirety.

## CONCLUSION

Having considered the Parties' briefing and evaluated the time records submitted by Plaintiffs' counsel, the Court **GRANTS** Plaintiffs request for fees and costs and **AWARDS** $357,542.98 in **attorneys' fees** and $423.66 in **costs**.

**SO ORDERED** on this **26th day** of **April 2024.**

*[signature: Mark T. Pittman]*

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE